JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| EMERIC JAY PAISLEY | KIDSPEACE, INC. |

**(b)** County of Residence of First Listed Plaintiff   SCHUYLKILL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   LEHIGH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Sidney L. Gold, Esquire - The Gold Law Firm, P.C.
1835 Market St., Ste. 515, Phila, PA 19103 215-569-1999

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[x] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | [ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |

*(Bankruptcy column continued):*
**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g))
**FEDERAL TAX SUITS**
[ ] 870 Taxes (U.S. Plaintiff or Defendant)
[ ] 871 IRS—Third Party 26 USC 7609

## V.  ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII, ADA, FMLA, PHRA

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 150,000 IN EXCESS

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 07/14/2026 | /S/ SIDNEY L. GOLD, ESQUIRE |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b) County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c) Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV. Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V. Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI. Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII. Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 4085 Independence Drive, Schnecksville, Pennsylvania 18078

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?    Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☒ 8.  Employment
☐ 9.  Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| EMERIC JAY PAISLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| KIDSPEACE, INC. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                     (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                                 (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                                  (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (☑)


| 07/14/2026 | /s/ Sidney L. Gold, Esquire | PLAINTIFF |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EMERIC JAY PAISLEY, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **CIVIL ACTION NO.**_____ |
| | : | |
| KIDSPEACE, INC., | : | |
| *Defendant.* | : | |
| | : | |

**COMPLAINT AND JURY DEMAND**

**I.    PRELIMINARY STATEMENT:**

1.    This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Emeric Jay Paisley ("Plaintiff"), a former employee of the Defendant, KidsPeace, Inc. ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2.    This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* ("PHRA").

**II.    JURISDICTION AND VENUE:**

3.    The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391, as Plaintiff's claims are substantively based on Title VII, the ADA, and the FMLA.

4.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff's claims arising under the PHRA.

1

5. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all other jurisdictional prerequisites to the maintenance of this action. On April 15, 2026, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission and this action has been filed within ninety (90) days of receipt of said notice.

### III. PARTIES:

6. Plaintiff, Emeric Jay Paisley ("Plaintiff"), is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 707 E. Mahanoy Street, Mahanoy City, Pennsylvania 17948.

7. Defendant, KidsPeace, Inc. ("Defendant"), is a corporation dually organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining a place of business therein at 4085 Independence Drive, Schnecksville, Pennsylvania 18078.

8. At all times relevant hereto, the Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

9. At all times material herein, the Defendant has been a "person" and "employer" as defined by Title VII, the ADA, the FMLA, and the PHRA, and has been, and is, subject to the provisions of each said Act.

### IV. STATEMENT OF FACTS:

10. Plaintiff was employed by the Defendant from November 15, 2021 until March 29, 2024, the date of his constructive termination.

11. Upon his hire, Plaintiff held the position of Mental Health Technician. As a result of his excellent job performance, in April 2022, Defendant promoted Plaintiff to the role of Assistant House Manager, which he held for the remainder of his tenure.

2

12.    During his initial job interview with the Defendant, Plaintiff disclosed that he is non-binary/gender queer and that he used they/them pronouns.[1] Plaintiff further informed Defendant that his chosen name is "Em." This information was disseminated to Defendant's New Associate Training team and Michelle Taylor ("Taylor"), Residential Human Resources Representative.

13.    Despite his clear disclosure of his gender identity and chosen name, as well as his repeated requests to be referred to by his chosen name and pronouns, Defendant refused to utilize Plaintiff's chosen name and pronouns in its informational technology systems, including all Microsoft programs. As a result, Plaintiff's dead name was linked to every document, email, and program he generated and received.

14.    As further discrimination, during his new hire orientation, Defendant issued Plaintiff a nametag bearing his dead name. Plaintiff registered a complaint with Defendant and requested a new nametag to reflect his chosen name.

15.    Although Defendant ultimately provided Plaintiff with a nametag reflecting his proper name, Defendant continued to refer to Plaintiff by his dead name during orientation, including on schedules disseminated to Plaintiff and other new hires.

16.    Upon his completion of orientation, Plaintiff notified his colleagues at Defendant's Barton House location that he used they/them pronouns and that his chosen name was Em.

17.    Thereafter, Defendant, through its agents, servants, and employees, consistently referred to Plaintiff using incorrect pronouns and his dead name, despite Plaintiff's repeated requests that his colleagues honor his pronouns and chosen name.

---

[1] As of the date of this Complaint, Plaintiff identifies as a transgender man and uses he/him pronouns. Although Plaintiff identified as non-binary/gender queer upon his hire and used they/them pronouns during his employment with Defendant until April 2023, this Complaint will use Plaintiff's current name/identity/pronouns throughout.

3

18.     As such, Plaintiff registered numerous complaints of gender identity/sex discrimination with Allyson Peer ("Peer"), Patriot Center Manager. Peer escalated Plaintiff's concerns to Elizabeth King ("King"), Patriot Center Program Director.

19.     In or around early 2022, Defendant transferred Plaintiff to its Revere House location.

20.     However, following his transfer, Defendant's employees, including, but not limited to, Tonia Lloyd ("Lloyd"), Mental Health Technician, continued to intentionally misgender and deadname Plaintiff.

21.     Upon each instance of Lloyd's misgendering and deadnaming, Plaintiff gently reminded her of his chosen name and pronouns, and requested that Lloyd honor them. In response, Lloyd became hostile toward Plaintiff and continued to refuse to honor his requests.

22.     Moreover, Lloyd deliberately misgendered Defendant's transgender patients as well, which Plaintiff opposed each time he witnessed such conduct.

23.     As such, Plaintiff registered several complaints of gender identity/sex discrimination with Rachel Whitley ("Whitley"), Revere House Manager, based on Lloyd's misgendering and deadnaming of himself and Defendant's transgender patients.

24.     However, Defendant failed and refused to take meaningful action to cause Lloyd's conduct to stop. As a result, her discriminatory treatment of Plaintiff and Defendant's transgender patients continued unabated.

25.     On one such occasion, Lloyd utilized a patient's dead name on a group chore chart. This was deeply embarrassing to the patient, who protested Lloyd's deadnaming. In retaliation, Lloyd issued a disciplinary "point" to the patient.

4

26.    Defendant's employees, including Lloyd, further subjected transgender patients to gender identity/sex discrimination by demanding that these patients reveal and use their "real names" as opposed to their chosen names that reflected their gender identity.

27.    Upon Plaintiff's promotion to Assistant House Manager, Plaintiff raised Defendant's ongoing discrimination toward him, as a non-binary individual, and Defendant's transgender patients during weekly co-leadership and staff meetings.

28.    Plaintiff also took initiative to provide door signs to patients that included their chosen names and pronouns. However, this initiative was almost immediately scrapped due to Defendant's staff making inappropriate, invasive, and discriminatory remarks about the gender and sexuality of transgender patients.

29.    Defendant's employees, including Jennifer Moss ("Moss"), Assistant House Manager, made similarly invasive and discriminatory remarks to Plaintiff based on his gender identity.

30.    For example, on one occasion, Moss asked Plaintiff if he had undergone "bottom surgery." After Plaintiff registered a complaint of gender identity/sex discrimination with Whitley, Moss begrudgingly informed Plaintiff that she was directed to apologize to him.

31.    In or around December 2022, Plaintiff was the recipient of a prank call from Andrew Farrell ("Farrell"), Mental Health Technician, and other staff at Defendant's Ross House. Farrell called and requested to speak with Plaintiff, identifying him by his dead name, which prompted raucous laughter in the background of the phone call.

32.    Plaintiff reported the prank call incident to Michael McGlynn ("McGlynn"), Assistant Program Director.  However, McGlynn failed and refused to take remedial action in response to Plaintiff's report.

5

33.     As a result, Plaintiff reported the prank call incident to Linda Peters ("Peters"), Human Resources Representative. Peters dismissed Plaintiff's report, and chastised him for complaining about use of his "correct name." Plaintiff voiced his opposition directly to Peters regarding her discriminatory remarks.

34.     Thereafter, during a mediation between Plaintiff and Farrell, Farrell revealed to Plaintiff that he had been pressured to refer to Plaintiff by his dead name by Miracle Lockwood ("Lockwood"), Ross House Assistant House Manager, and Alexis Anderson ("Anderson"), Ross House Mental Health Technician.

35.     Lockwood and Anderson faced no discipline or repercussions for their involvement in the prank call incident.

36.     In February 2023, Plaintiff began a course of gender affirming hormone treatment. Plaintiff disclosed this information to Whitley, Paula Santibanez ("Santibanez"), Clinician, Jackie Berger ("Berger"), Clinical Manager, and Chace Helmer ("Helmer"), Clinician, in an effort to preempt intrusive and discriminatory comments about anticipated changes to Plaintiff's physique in connection with the treatment.

37.     Upon his disclosure, Berger commented that Plaintiff would look like a "bearded lady" during his medical transition, and questioned his ability to perform his job duties due to her discriminatory perception of him as a non-binary/transitioning individual.

38.     Plaintiff also requested that Defendant conduct informational trainings for staff about gender identity to mitigate the ongoing discrimination he experienced by almost the entirety of Defendant's staff. However, Defendant rejected Plaintiff's suggestion.

6

39.    By way of background, Plaintiff is diagnosed with general anxiety disorder. As a result of the ongoing, unaddressed discrimination and harassment to which Plaintiff was subjected in the workplace, he experienced an onset of symptoms associated with his disability.

40.    Said medical condition constitutes a disability within the meanings of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") in that it substantially impairs one or more of Plaintiff's major life activities, including, but not limited to, thinking, communicating, emotional regulation, and caring for oneself.

41.    Because he was suffering from exacerbated symptoms of his disability, Plaintiff disclosed his disability to Defendant and requested a medical leave of absence pursuant to the Family and Medical Leave Act ("FMLA") as a reasonable accommodation for his disability.

42.    Plaintiff commenced FMLA leave on March 13, 2023 and returned as scheduled on April 5, 2023.

43.    Upon Plaintiff's return to work, Defendant's hostilities escalated in retaliation for requesting a reasonable accommodation for his disability.

44.    By way of example, Whitley displayed clear disdain for Plaintiff's medical leave upon his return through curt, disrespectful, and hostile interactions.

45.    Immediately upon his return, King and Carlos Reyes ("Reyes"), Center Manager, transferred Plaintiff from Revere House to King House.

46.    Upon his transfer to King House, Plaintiff disclosed to Defendant that he had adopted he/him pronouns and identified as a transgender man.

47.    In connection with his transfer to King House, Defendant generated a new name tag for Plaintiff with his dead name. Despite previous issuance of name tags with his chosen name, Defendant insisted that it was impossible to utilize his chosen name.

48.     During his assignment at King House, Tracey Gater ("Gater"), Mental Health Technician, subjected Plaintiff to harassment and discrimination based on his gender identity/sex as a transgender individual.

49.     For example, Gater told a patient that Plaintiff was "not a boy" and is "just a girl dressed in boys' clothes."

50.     On another occasion, a nine-year-old patient corrected Gater when she misgendered Plaintiff, to which Gater screamed in the patient's face, "It doesn't fucking matter!"

51.     Additionally, Gater complained to Nicole Isamoyer ("Isamoyer"), Mental Health Technician, that Plaintiff did not acknowledge her when she greeted a group of colleagues with "hi girls." Gater continued that "[Plaintiff] will be called what **she** was born with and that's the way life is."

52.     On April 13, 2023, Plaintiff suffered a work-related injury, resulting in four torn ligaments in his ankle. Said medical condition constitutes a disability within the meanings of the ADA and PHRA in that it substantially impairs one or more of Plaintiff's major life activities, including, but not limited to, walking, standing, and carrying.

53.     On April 23, 2023, Plaintiff requested workplace restrictions as a reasonable accommodation for his disability at the direction of Dr. Victor Otero ("Dr. Otero"), Plaintiff's treating physician. These included no use of stairs and allowance to sit for 10 minutes per hour.

54.     On June 3, 2023, Isamoyer submitted a written statement detailing Gater's discriminatory treatment of Plaintiff to King.

55.     Moreover, a patient who observed Gater's discriminatory treatment of Plaintiff also submitted a complaint on Plaintiff's behalf to Defendant.

8

56. Rather than take remedial action against Gater, Defendant forced Plaintiff to participate in a mediation with Gater, which was highly unproductive and distressing to Plaintiff.

57. Defendant eventually offered a training session entitled the "clinical café." However, the potential impact of the training was diminished by Defendant's refusal to make the training mandatory for all staff. Those who had subjected Plaintiff to the most extreme discrimination and harassment, of course, did not opt to attend.

58. On June 29, 2023, Plaintiff requested sedentary work, limited stair climbing, standing/sitting/walking as tolerated, avoidance of restraining patients, and five minutes of sitting per hour as a reasonable accommodation for his disability. Plaintiff supplied a note from Dr. Otero in support of said request.

59. In response, McGlynn assigned Plaintiff to work at a desk in a hallway, which was an impractical location for Plaintiff to remain sedentary as it was accessible to Defendant's highly active, and at times, aggressive patients.

60. As a result of Defendant's refusal to honor Plaintiff's accommodations, Plaintiff experienced an onset of severe pain.

61. On July 10, 2023, Plaintiff sought treatment for the exacerbation of his disability symptoms. At this time, Dr. Seth Burkey ("Dr. Burkey"), Orthopedist, upgraded Plaintiff's workplace restrictions to no client contact and exclusively clerical/computer work. Plaintiff notified Defendant of said directives.

62. On July 14, 2023, Dr. Burkey provided additional documentation in support of Plaintiff's request for reasonable accommodation, confirming Plaintiff's sedentary work restrictions, no client contact, and permission to wear an ankle brace or boot as needed.

9

Defendant declined to honor Plaintiff's accommodation requests for two weeks, but ultimately placed him in a reception role at the end of July 2023.

63. On August 1, 2023, Plaintiff obtained a legal name change to "Emeric." Plaintiff notified Defendant's Human Resources department immediately of this change.

64. In August 2023, Plaintiff underwent surgery as treatment for his torn ligaments and thereafter took medical leave pursuant to Defendant's workers' compensation leave policy to recover as a reasonable accommodation.

65. On October 16, 2023, Plaintiff was medically authorized to return to work with light duty restrictions for a period of four weeks at the direction of Dr. Eric Bronfenbrenner ("Dr. Bronfenbrenner"), Podiatrist. These restrictions included no running or jumping, no stairs, a lifting restriction of 20 pounds, and allowance to sit for 20 minutes every hour. Defendant refused to grant said accommodations, and therefore barred Plaintiff from returning to work.

66. On November 23, 2023, Plaintiff was medically authorized to return to work with no restrictions.

67. Upon his return, Defendant reassigned Plaintiff to Barton House. Plaintiff opposed this reassignment based upon the previous discriminatory treatment to which he was subjected at Barton House. Defendant dismissed Plaintiff's opposition and effectuated his transfer.

68. Upon his transfer, Kye Davis ("Davis") and Michael Marshall ("Marshall"), Mental Health Technicians, refused to honor Plaintiff's pronouns. Defendant failed to cause this discriminatory treatment to cease.

69. Additionally, Austin Giraud ("Giraud"), Assistant House Manager, made discriminatory and degrading remarks about gender identity to Plaintiff. On one occasion, Giraud

sarcastically stated that he "didn't realize [he] was working at Revere House," thereby attempting to insult Barton House's boy patients as behaving like girls.

70. On another occasion, Giraud referred to "Brokeback Mountain" in the presence of patients in a manner that evidenced discriminatory animus toward gay men.

71. Plaintiff continued to raise complaints of gender identity/sex discrimination during weekly leadership and staff meetings. Defendant dismissed Plaintiff's reports and pleas for help and attributed the discriminatory treatment he experienced to Plaintiff's own "lack of confidence."

72. On March 6, 2024, during a meeting with King, Reyes, McGlynn, and Davis Junior ("Junior"), House Manager, Plaintiff reiterated his general anxiety disorder diagnosis and the damaging effects Defendant's discriminatory treatment actively had on his disability. During this meeting, Defendant continued to inexplicably blame Plaintiff's "lack of confidence" for the discrimination to which Defendant was subjecting him.

73. On March 14, 2024, Plaintiff registered another complaint of gender identity/sex discrimination with Reyes. Plaintiff specifically articulated that the working conditions were intolerable and that he was desperate for help.

74. Thereafter, on March 19, 2024, Plaintiff registered another complaint of gender identity/sex discrimination with Davis. Plaintiff elaborated that he felt deeply unsafe and desperate as a result of Defendant's failure to cause the discrimination to stop.

75. The following day, on March 20, 2024, Plaintiff registered another complaint of gender identity/sex discrimination with King. At this time, Plaintiff requested to transfer out of Barton House due to the intolerable and unremedied discrimination.

11

76.     However, King rejected Plaintiff's request, citing an obviously non-existent policy that Assistant House Managers could not be transferred within six months.

77.     Plaintiff experienced a panic attack due to his meeting with King. Plaintiff notified King that he needed to utilize FMLA leave on an emergency basis.

78.     On the same date, Plaintiff registered another complaint of gender identity/sex discrimination with Peters via voicemail. Despite Plaintiff's explicit request that Peters return his call, Peters instead sent Plaintiff an email at an inactive email address that reflected his dead name. Notably, Plaintiff had only ever provided his active email address, reflecting his chosen name, to Defendant.

79.     On March 21, 2024, Plaintiff registered another complaint of gender identity/sex discrimination with Peters and Cathy Martucci ("Martucci"), Assistant Director of Human Resources. Peters and Martucci failed to provide Plaintiff with any remedial avenues for the discrimination he alleged, and confirmed unequivocally that he was required to report to work at Barton House.

80.     On March 29, 2024, as a result of the intolerable, discriminatory, and retaliatory working conditions fostered by Defendant, Plaintiff's employment was constructively terminated.

## COUNT I
### (Title VII – Sex/Gender Identity Discrimination, Hostile Work Environment, Retaliation)
### Plaintiff v. Defendant

81.     Plaintiff incorporates by reference paragraphs 1 through 80 of this Complaint as though fully set forth at length herein.

12

82.    The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to sex/gender identity discrimination, a sex-based hostile work environment, and retaliation for opposing unlawful discrimination, constituted violations of Title VII.

83.    As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff has sustained permanent and irreparable harm, resulting in the constructive termination of his employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

84.    As further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**COUNT II**
**(ADA – Disability Discrimination,**
**Failure to Accommodate, Retaliation)**
**Plaintiff v. Defendant**

85.    Plaintiff incorporates by reference paragraphs 1 through 84 of this Complaint as though fully set forth at length herein.

86.    The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination on the basis of his actual and/or perceived disabilities and/or record of impairment, failing to accommodate Plaintiff's disabilities, and retaliating against Plaintiff for requesting reasonable accommodations for his disabilities, constituted violations of the ADA.

87.    As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm, resulting in the constructive termination of his employment,

13

which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

88.     As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT III
### (FMLA – Interference, Retaliation)
### Plaintiff v. Defendant

89.     Plaintiff incorporates by reference paragraphs 1 through 88 of this Complaint as though fully set forth at length herein.

90.     The actions of the Defendant, through its agents, servants, and employees, in interfering with Plaintiff's ability to exercise his rights under the FMLA, and in retaliating against Plaintiff for exercising his rights under the FMLA, constituted violations of the FMLA.

91.     The aforesaid actions of the Defendant were willful, malicious, wanton, in bad faith, and in reckless disregard of Plaintiff's rights.

92.     As a direct result of the actions of the Defendant, as aforesaid, Plaintiff has suffered a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay and interest due thereon.

## COUNT IV
### (PHRA – Sex/Gender Identity Discrimination, Hostile Work Environment, Disability Discrimination, Failure to Accommodate, Retaliation)
### Plaintiff v. Defendant

93.     Plaintiff incorporates by reference paragraphs 1 through 92 of this Complaint as though fully set forth at length herein.

94.     The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to sex/gender identity discrimination, a sex-based hostile work environment,

14

and disability discrimination, in failing to accommodate Plaintiff's disabilities, and in retaliating against Plaintiff for opposing unlawful discrimination and requesting reasonable accommodations for his disabilities, constituted violations of the PHRA.

95.     As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff has sustained permanent and irreparable harm, resulting in the constructive termination of his employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

96.     As further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**PRAYER FOR RELIEF**

97.     Plaintiff incorporates by reference paragraphs 1 through 96 of this Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor and against the Defendant, and order that:

a.     Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination and retaliation;

b.     Defendant compensate Plaintiff with an award of front pay, if appropriate;

c.     Defendant pay to Plaintiff punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

15

d.      Defendant pay to Plaintiff pre- and post-judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e.      The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

THE GOLD LAW FIRM, P.C.

By:    /s/ Sidney L. Gold, Esquire
       SIDNEY L. GOLD, ESQUIRE
       I.D. No.:  21374
       1835 Market Street, Suite 515
       Philadelphia, PA 19103
       (215) 569-1999
       **Attorney for Plaintiff**

DATED:   July 14, 2026

16

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.


DATE: 07/13/2026

Emeric Jay Paisley (Jul 13, 2026 11:38:15 EDT)
EMERIC JAY PAISLEY, PLAINTIFF